G. A. ROSS v. THE STATE.

No. 16968. Delivered December 12, 1934.
Rehearing Denied March 6, 1935.

The opinion states the case.

Vickers, Campbell & Evans, of Lubbock, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of robbery, and his punishment assessed at confinement in the State penitentary for a term of five years.

C. C. Lindsey, who was the manager of the Palace and Lindsey Theaters located and operated in the city of Lubbock, testified as follows: "On the night of February 7, 1932, at about 10:30, some one knocked on my back door. I went to the door and saw a man standing there who said, 'Hello, Cliff, Chunky, your kid brother, is in trouble down at the hotel. He has been drinking and got into trouble and sent me out here to get you to come and take him home.' I put on my coat and said to him, 'We will go down in my Ford coupe.' We got into the car and I turned on the lights, including the dash light, and started driving down Main street. When we got about the middle of the block I felt something pressing against my side and when I looked I saw it was a gun. I asked him what he wanted and he said he wanted my money. I gave him $29.00 in currency. After I did that he told me to drive out toward Mexican Town, which I did. When we got to Mexican Town he asked me if there was anybody still at the theater. I told him I did not know. He then said, 'Well, we will kill a little time here until the theater closes.' After a little while, he said, 'Let's drive back to the theater.' We drove back there, parked the car across the street from the Palace Theater Building, and then walked up to the office, and he asked me to open the safe. I told him I could not open it in the dark. He then got out a little flashlight, held it on the combination, and I opened the safe, took out the money, and sat it on the floor. It was in three, four, or five sacks. There was a red portfolio on the top of the safe and he suggested that I put the money in it, which I did. After I had put the money in the portfolio he said, 'Come on and go with me.' We walked out to the car, got in it and he said, 'Drive just like you were going back home,' and then he made me turn north until we crossed the bridge over canyon. When we got out there he stopped the car, told me to get out and hold up my hands, which I did, and he then drove away. I then started back to Lubbock. John Williams came along and he picked me up, brought me back to town, and upon reaching home I told my wife what had happened and then telephoned the police. I gave up the money because I was afraid he would

shoot me. There was $1060.40 which he got. I knew I had seen this man before around the theater but I did not know his name. I recognized his face. The next time I saw this man was on the following Saturday in the main part of the town of Lubbock. He was in a car. I tried to get the car number but there were other cars backing out and I couldn't get it. On the following Saturday I saw him again at Stanton's confectionery in the town of Lubbock. I parked my car, went in the drug store and telephoned the police. When Grady Harrison, a policeman, came, the man had gone through the kitchen into an alley and disappeared. I did not see this man any more until about the 19th day of September when I saw him walk into a barber shop here in Lubbock at which time I had a complaint written up. This man, G. A. Ross, is the man who robbed me. On the night of January 25, 1932, our safe was opened and $1160.00 was taken out of it. The safe was not broken open, it was opened. We carried burglary insurance. I admit I opened the safe on February 7th, but will not admit that I opened it on January 25. We collected from the insurance company the insurance. James Lucus, who was assistant manager, and Mrs. Foster, who was the secretary, and I are the only persons who knew the combination of the safe. On the morning following the night of January 25, when Mrs. Foster opened the safe, the door was closed but was unlocked and the money was gone. I remained as manager until some time in March, when I went out as manager of my own volition. James Lucus stayed as assistant manager with the theater about two weeks after January 25th."

Ellis Green testified for the State that he came along the old Plainview road between 12 and 1 o'clock that night; that he saw Lindsey's Ford coupe standing on the side of the road. Luther Green testified that he saw the Ford coupe on the side of the road the next morning when he brought his children to school. The appellant denied that he robbed C. C. Lindsey. He testified that he lived in the country some 20 or 25 miles from Lubbock; that he came to Lubbock once or twice every week; that he did much of his trading at Lubbock; that he had gone to the picture show many times prior to the 7th day of February, 1932, and since said time; that on the night of February 7, 1932, he was at home with his family, and his wife testified to the same facts. The proof further showed that C. C. Lindsey's car was found the next day standing by the side of the road just a short distance across canyon and near the place where he, Lindsey, said the appellant let him out of the car and

drove away. Hugh Walker was seen in a sedan car on the night of February 7 between 12 and 1 o'clock near the bridge over canyon. The testimony further shows that no complaint was filed against the appellant charging him with the robbery of C. C. Lindsey on February 7 until some time in the month of September when the trial of Hugh Walker and Jess Covington on a charge of murder was in progress and in which case the appellant was the principal witness for the State and had agreed to testify for the State upon being promised immunity; that some time during the progress of said trial C. C. Lindsey, who claimed to have been robbed, accompanied by Ernest Covington and the attorney for Hugh Walker et al came to the county attorney's office to make a complaint against the appellant, but the county attorney at that time declined to take any complaint. He directed them to go to the district attorney and see him about it, which they did. The district attorney advised them that the making of a complaint against appellant be deferred until the Walker et al trial was concluded.

The appellant makes two contentions: First, that the court erred in not submitting to the jury the issue as to whether C. C. Lindsey was an accomplice; and, second, that the court erred in not instructing the jury that if Lindsey robbed himself or had himself robbed by some other person, then the appellant was entitled to an acquittal. By reason of the appellant's contentions, we have purposely set out the testimony at greater length than we would otherwise have done. If there was any testimony which raised either of the issues, then the appellant's contention would be correct, but we fail to find any testimony which would warrant the submission of the issue of whether C. C. Lindsey was an accomplice. The appellant denied having robbed Lindsey or that he had any connection therewith and Lindsey denied that he joined the appellant in the commission of the offense. We have also searched the record carefully for any fact or circumstance which would warrant the submission of an issue that Lindsey robbed himself or had himself robbed by some other person than the appellant. It is true there are suspicious circumstances in the record, but they do not rise to the dignity of raising the issue. There is no testimony showing that Hugh Walker and Jess Covington or either of them were close friends of Lindsey or that Lindsey was interested in their defense and probably wanted to punish the appllant for testifying against them in the murder trial, nor is there any testimony that Hugh Walker or Jess Covington were seen in company with Lindsey either

Sunday or Sunday night prior to or at the time of the alleged robbery. Circumstances tending to raise an issue should be of a degree of certainty greater than a mere probability or strong suspicion.

Having reached the conclusion that there was not sufficient testimony either direct or circumstantial which would have warranted the court in submitting to the jury the issues contended for by appellant, we therefore overrule appellant's contentions and affirm the judgment of the trial court.

*Affirmed.*

.The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant has filed a motion for rehearing in which it is again urged that the issue was raised whether Lindsey had "robbed" himself or procured it to be done, and such issue should have been submitted to the jury, and also that because of such issue the question of whether Lindsey was an accomplice witness should have been submitted to the jury. The motion presents the points as strongly as possible from the viewpoint of appellant. The matter urged has made it necessary to again review the facts to ascertain if anything had been overlooked in considering the case originally. After a close re-examination of the evidence we remain of the opinion that while some suspicious circumstances arise from the evidence they are not of sufficient cogency to raise the issues which appellant insists should have been submitted to the jury.

The motion for rehearing is overruled.

*Overruled.*